**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Criminal No.** 22-313 (FAB) |
| JAINANT JOSUÉ MARIANI-ROMERO, *et al.*, | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Jainant Josué Mariani-Romero ("Mariani")'s motion to dismiss.  The motion was joined by defendants José Alejandro Martínez-Peralta (Martínez) and Ariel Martínez (Docket Nos. 53, 55, 56, 57, and 58.)  For the reasons set forth below, Mariani's motion to dismiss, which was joined by his co-defendants, is **DENIED.**

**I.  Background**

Homeland Security Investigations Special Agent Gabriel Ortiz ("Ortiz") prepared an affidavit in support of the criminal complaint.  (Docket No. 1, Ex. 1.)  The following allegations derive from this affidavit.

On June 22, 2022, United States Coast Guard ("USCG") and Customs and Border Protection ("CBP") agents observed a go-fast vessel approximately 110 nautical miles southeast of Isla Beata,

Dominican Republic.  Id. at p. 3.  This vessel displayed no indicia of nationality.  Id.  The three occupants of the vessel altered course and jettisoned multiple packages into the ocean.  Id.

USCG and CBP agents subsequently intercepted the vessel, identifying the occupants as Mariani, defendant José Alejandro Martínez-Peralta, and defendant Ariel Martínez (collectively, "defendants").  Id.  Each defendant claimed to be the vessel's master but made no declarations regarding the vessel or its nationality.  Id.  The USCG recovered 20 fuel barrels and 8 bales from the vessel.  Id. at p. 4.  Law enforcement agents also retrieved two bales "and several small packages" from the ocean.  Id.  The 10 bales and small packages contained approximately 300 kilograms of cocaine.  Id.  USCG and CBP agents then destroyed the vessel and arrested the defendants.  Id.

On July 13, 2022, a grand jury returned a three count indictment charging the defendants with conspiracy to possess with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (count one), possession with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2 (count two), and jettisoning property subject to forfeiture, pursuant to 21 U.S.C. § 881(a),

from a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(2), 70506(d), and 18 U.S.C. § 2 (count three).   (Docket No. 18.)   Mariani, joined by his co-defendants, moves to dismiss the indictment for lack of jurisdiction.   (Docket No. 53.)

## II.   Federal Rule of Criminal Procedure 12

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a "motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2).   On a motion to dismiss, the allegations contained in the indictment are accepted as true.   See United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

The federal judicial authority extends "to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and Treaties made." U.S. CONST. art. III, § 2.   This Court possesses subject matter jurisdiction in a criminal action when the indictment charges "that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes." United States v. González, 311 F.3d 440, 442 (1st Cir. 2002); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of courts of the States, of all offenses against the laws of the United States.").

Mariani and, by joining his motion his co-defendants, assert that this Court lacks subject matter jurisdiction pursuant to Article I, Section 10 of the United States Constitution.  (Docket No. 53.)  The motion to dismiss pertains to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502(c)(1), *et seq*.

## A.    The Maritime Drug Law Enforcement Act

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug trafficking organizations.  These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country."  United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act:  A Justification for the Law's Extraterritorial Reach, 8 HARV. NAT'L SEC. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ting] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore.").  Consequently, the MDLEA is an expansive statute.  It provides that "an individual [on board a vessel subject to the jurisdiction of the United States] may not knowingly or intentionally:"

(1) manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance;

> (2) destroy (including jettisoning . . .), or attempt or conspire to destroy, property that is subject to forfeiture under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

48 U.S.C. §§ 70503(a)(1)-(2). "[J]urisdictional issues arising under the [MDLEA] are preliminary questions of law to be determined solely by the trial judge," and do not constitute an element of the offense. 46 U.S.C. § 70504; see United States v. Gil-Martínez, 980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.). Vessels subject to criminal liability include, *inter alia*, "a vessel without nationality." 46 U.S.C. § 70502(c)(1)(A); see United States v. Mitchell-Hunter, 663 F. 3d 45, 48 (1st Cir. 2011) ("Thus, the vessel qualified as a 'vessel without nationality,' and was subject to the jurisdiction of the United States under the MDLEA.").

The MLDEA derives from Article I of the Constitution, which grants Congress the authority to "define and punish Piracies and Felonies committed on the high seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. Since the founding of the United States, "the ability to effectively prosecute crime committed on the high seas was seen as vital to the interests of the Confederation." Adam H. Kurland, First Principles of American Federalism and the Nature of Federal Criminal Jurisprudence, 45 EMORY L.J. 1, 23-4 (1996) (noting that

the framers convened the Constitutional Convention in part because "crimes occurring on the high seas, by definition occurred outside the territorial jurisdiction of a particular state and thus made the issue of state prosecution problematic").

## III. Discussion

Mariani and his co-defendants, by joining in his motion, contend that this Court lacks jurisdiction because law enforcement agents apprehended them within the exclusive economic zone ("EEZ") of the Dominican Republic.  (Docket No. 53 at p. 4.)  Pursuant to Article 55 of the United Nations Convention on the Law of the Sea ("UNCLOS"), the "exclusive economic zone is an area beyond and adjacent to the territorial sea."[1]  This zone extends 200 nautical miles from land.  Id.  They maintain that the EEZ of the Dominican Republic "does not correspond to the 'high seas.'"  Id.  Because Article I cannot substantiate a criminal prosecution for acts committed within a foreign state's EEZ, Mariani and the other defendants argue, the MDLEA is unconstitutional as applied to them. Id.  This argument is unavailing.

The term "high seas" includes the EEZ of the Dominican Republic.  See United States v. Matos-Luchi, 627 F.3d 1, 2 n.1

---

[1] Available at https://www.un.org/Depts/los/convention_agreements/convention_overview_convention.htm (last visited June 21, 2023).  The Court notes that the "United States has signed but not ratified the UNCLOS."  United States v. Aybar-Ulloa, 987 F.3d 1, 5 n.2 (1st Cir. 2021).

(1st Cir. 2010) (holding that the EEZ of the Dominican Republic is "considered the 'high seas' for purposes of the Coast Guard's enforcement jurisdiction," affirming the defendant's MDLEA conviction); United States v. Beyle, 782 F.3d 159, 167 (4th Cir. 2015) (holding that a nation's EEZ is "merely part of the high seas"); United States v. Iona De Jesús, Case No. 22-20473, 2023 U.S. Dist. LEXIS 103411, at *7-8 (S.D. Fla. May 4, 2023) ("A vessel outside the recognized 12-mile limit of a nation's territorial seas is a 'vessel located within international waters' subject to the United States' jurisdiction under the MDLEA."); United States v. Berroa, Case No. 21-20359, 2022 U.S. Dist. LEXIS 72670, at *9 (S.D. Fla. Apr. 20, 2022) ("[A] nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas. Therefore, the Court finds the MDLEA constitutional as-applied in this case."). Because Mariani's and his co-defendant's EEZ argument has no merit, Mariani's motion to dismiss is **DENIED.**

**IV. Conclusion**

For the reasons set forth above, Mariani's motion to dismiss is **DENIED.** (Docket No. 53.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 22, 2022.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE